[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the Planning and Zoning Commission of the Town of Tolland denying the plaintiffs' application for the approval of an eight-lot subdivision.
FACTS
The plaintiffs own a tract of land in Tolland consisting of approximately two hundred seventy-six acres. On September 1, 1989 they applied to the defendant Commission to approve an eight-lot subdivision. They paid the necessary fee. The statutorily required notices of public hearing were mailed to all interested parties in addition to being published.
The public hearing was held November 13, 1989 and because of the interest in the proposed project and the lengthy testimony it engendered, that hearing was continued on November 27, 1989. The parties have agreed that while the long-range plans of development envisioned fifty-nine building lots, the application in question concerned only eight lots. The parties have also stipulated that the subject real estate is zoned residential — the very use to which the proposed subdivision was to be put.
The plaintiffs' application generated considerable interest. Several home owners in the area of the proposed subdivision banded together and designated themselves the "Reed Hill Property Owners' Association". They engaged counsel to represent them. Evidence presented by the plaintiffs included: a report of Robert Kortmann dealing with the ecology of a pond located on the property; maps showing proposed roads and land elevations; maps of proposed lots; the testimony of David Freed, a geo-technical engineer who testified about the rock excavation necessary for drilling wells and installing utilities and his opinion that any blasting of bedrock necessitated by the project would not damage nearby structures of wells supplying them with water; and the testimony of James Bubaris, a traffic engineer, whose opinion it was that even if more than eight lots were developed on the subject site, there would not be an adverse impact upon traffic in the area. The defendant Commission's secretary read correspondence into the record of the public hearing including approval of the application by the Inland Wetlands Commission and the Town Sanitarian's opinion that six of the eight lots proposed in the subdivision were CT Page 4111 buildable and otherwise met State Health Code requirements. Also read into the record was a letter to the plaintiff's attorney from the engineer, as to the adequacy and suitability of planned storm water drainage and the adequate safeguarding of wetlands.
The first public hearing was continued to allow the Reed Hill Property Owners Association to review the testimony and reports introduced by the plaintiffs. Individual property owners addressed the hearing on the first night to state their concerns about the effect of blasting, the impact of the subdivision upon traffic in the area and the overall effects on the environment of the neighborhood. During the course of the continued hearing, correspondence concerning the necessity of obtaining a fire marshall's permit to perform blasting and letters from area home owners expressing concerns about the effects of blasting and increased traffic were read into the record.
Evan Glass testified about the geology of the land in question. His opinion was that any required blasting of bedrock would not negatively impact nearby existing wells. Mr. Freed was recalled. He reiterated his opinion that the blasting as planned would not damage nearby existing structures or wells. The plaintiff recalled a witness named Peterson, an engineer, who addressed the concerns of some residents about dangerous intersections in the area. His opinion was that any problems could be resolved by removing obstructions such as trees and stone walls and that the project would not have an adverse impact upon traffic. Robert Kortmann, the professional ecologist, testified that the plaintiff had satisfied all the concerns of the Inland Wetlands Commission to preserve the pond and the riparian strip on the property. He also spoke about the steps that would be taken to safeguard the said wetlands from drainage damage. The plaintiff also presented the defendant Commission with a proposed conservation easement to guarantee the protection and preservation of the wetlands in issue.
The attorney for the Reed Hill Property Owners' Association conducted extensive, highly technical, cross- examination, especially with regard to the bedrock formations in the area, how same related to existing wells and water supplies, how the proposed blasting might affect safe, and the effects of blasting on the ecology in the area and the like. That attorney took issue with the conclusions of the plaintiff's experts but, notably, neither the attorney nor his clients produced any expert witnesses to testify on their behalf. On December 13, 1989 the Planning and Zoning Commission of the Town of Tolland denied the plaintiff's CT Page 4112 application for an eight-lot subdivision stating:
 The application was denied on the grounds that the applicant contemplates fifty-nine lots of which only five have been demonstrated as suitable and is thus, immature and not providing for the orderly division of land; and that said application poses traffic concerns; and that this application is not in accordance with Section 2.5.2 of the Tolland Subdivision Regulations.
Section 2.5.2 of those regulations states the following:
2.5.2 Approval:
 The Commission shall give approval to the subdivision if it finds that the subdivision map, plans, accompanying certificates, documents and data conform to the requirements of these regulations. In order for the subdivision to be approved, the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety, that proper provisions shall be made for water, drainage and sewage and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that proper provisions shall be made for protective flood control measures and that proposed streets are in harmony with existing or proposed principal thoroughfares shown in the plan of development as described in Connecticut General Statutes (8-23), especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs. In addition, the Commission may require the provision of open spaces, parks and playgrounds when, and in places deemed proper by the Commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan. Further, proper provision shall be made for soil erosion and sediment control pursuant to Connecticut General Statutes (22a-329). Such approval shall not constitute final approval.
The plaintiffs claim that the Commission, in denying the application for the eight-lot subdivision, acted illegally, arbitrarily and capriciously because: (1) it considered a potential fifty-nine lot subdivision when the application was CT Page 4113 specifically limited to eight lots; (2) its finding that the eight-lot subdivision did not meet traffic safety concerns was wholly contrary to the evidence presented; and (3) its reference to Sec. 2.5.2 of the Zoning Regulations of the Town of Tolland, without specifying a particular section or portion thereof, is overly broad.
At the outset the Court determines that the plaintiffs are aggrieved. Aggrievement is proven by showing that the plaintiffs have a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest and they are, thereby, specifically and injuriously affected in their property rights. Vose v. Planning and Zoning Commission of the Town of Westport,171 Conn. 480 (1976). As owners of the subject land, the plaintiffs are aggrieved.
The ultimate question is whether or not the defendant zoning authority acted illegally, arbitrarily or in abuse of the discretion vested in it as an administrative body. Beit Havurah v. Zoning Board of Appeals, 171 Conn. 440, 444
(1979). Did the zoning authority assign reasons for the denial of the plaintiff's application that are reasonably supported by the record? Zieky v. Town Planning and Zoning Commission, 151 Conn. 265, 267 (1963). This Court is of the opinion that it did not.
The defendant Commission had before it a proposed eight-lot subdivision. Only six of the eight lots were buildable. Its role was limited to the request before it. C.G.S. 8-26 states, "The Commission shall approve, modify and approve, or disapprove any subdivision application or maps and plans submitted therewith. . . ." The defendant had no authority to consider any possible future submission by the plaintiffs. Federico v. Planning and Zoning Commission,5 Conn. App. 509, 514, 515 (1985). Moreover, the defendant Commission's concerns about traffic are untenable. Six single-family dwellings cannot, as a practical matter, adversely impact traffic in the area.
The Court is persuaded that the case of Sowin Associates v. Planning and Zoning Commission, 23 Conn. App. 370 (1990) is controlling. The areas of land at issue is undisputedly zoned residential. The plaintiffs' application is for a residential subdivision. The plaintiffs' submission, therefore, is for a permitted use. Hence, there is "a conclusive presumption that the use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." Sowin, supra, 374. CT Page 4114
In addition, Sowin held that
 Subdivision regulations cannot be too general in their terms and must contain known and fixed standards that apply to all similiar cases. . . .A Commission's regulations must be reasonably precise in subject matter and reasonably adequate and sufficient to give both the Commission and those affected by its decision notice of their rights and obligations. . . .
 General policy statements gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit.
Sowin, supra, 376.
The defendant's reference to Sec. 2.5.2 of its regulations constituted just such a general policy statement and was not, therefore a legally sufficient reason for denying the plaintiff's application.
The plaintiffs' appeal to the Court is sustained and the Court directs the Planning and Zoning Commission of the Town of Tolland to approve the plaintiff's application for an eight-lot subdivision.
SCHEINBLUM, J.